[Cite as *State v. Banks*, 2020-Ohio-5518.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-256 |
| v. | : | (C.P.C. No. 17CR-3814) |
| James W. Banks, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 3, 2020

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief**: *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, James W. Banks, appeals the jury verdict of the Franklin County Court of Common Pleas finding him guilty of one count of sexual battery upon a substantially impaired person and the court's judgment sentencing him to four years incarceration. He asserts that the trial court wrongly denied his motion for judgment of acquittal pursuant to Crim.R. 29 and that his conviction is against the manifest weight of the evidence.

{¶ 2} A.H. is an alumnus of Ohio Wesleyan University in Delaware, Ohio. On May 19, 2017, she and some friends traveled to Delaware to attend a class reunion, where they planned to stay the weekend in a university dorm room they had rented. (Feb. 26, 2019, Tr. Vol. II at 179-80). That evening, A.H. and her friends went to a dinner in the campus center, where she consumed three or four glasses of wine. *Id.* at 180-81. Afterwards, they returned to their room to change clothes and proceeded to a nearby campus bar, The

Backstretch. *Id.* at 182. A.H. remembers that several of the servers who had worked at the dinner were present at The Backstretch. *Id.* at 185. Banks was apparently one of the servers at the earlier dinner, and he was there that night with a friend. *Id.* at 269-74. A.H. recalls arriving at the bar and ordering a Bud Light, but she has no memories of anything occurring after that point until the following morning. *Id.* at 186. She specifically did not remember engaging in sexual activity with anyone.

{¶ 3} A.H. awoke the next morning in an unfamiliar hotel room, naked, confused, and sick. She also felt like her vagina had been sexually penetrated, although she did not remember having sexual activity with anyone. *Id.* at 192-93. Mr. Banks was in the room and asked her if she wanted to share an Uber back to the Ohio Wesleyan campus. A.H. declined. *Id.* at 188. She also refused to give Banks a hug, but shook his hand. As soon as Banks left the room, she called one of her friends, A.G. *Id.*

{¶ 4} Unbeknownst to A.H., the hotel room turned out to be located in Columbus, and A.G. drove from Delaware to come pick her up. When A.G. arrived at the room, she found it in disarray, and found A.H. in shock and having locked herself in the bathroom "because she wanted to make sure that she was safe." *Id.* at 278. A.G. helped A.H. gather her things and check out of the room. A.H. left her underwear behind because they were soaking wet. *Id.* at 279-80. A.H. felt sick, and she was sore and uncomfortable in her vaginal area. A.H. testified at trial that on that morning she did not recognize Banks from the prior night, and had never previously met him. *Id.* at 202.

{¶ 5} After A.G. picked up A.H. and took her back to the dorm room to change clothes, she and A.H. went to Grady Memorial Hospital in Delaware. *Id.* at 193-94. At the hospital, A.H. was evaluated by a sexual assault nurse examiner, or "SANE" nurse. The SANE nurse testified at trial regarding the examination at Banks' trial and noted several unexplained injuries she observed on A.H.'s body during the exam, including one near her vaginal area. *Id.* at 352-55. Additionally, DNA taken from A.H.'s vagina was subjected to Y-STR testing and compared to a DNA sample provided by Banks, and he could not be excluded as a contributor of that material. (Feb. 27, 2019, Tr. Vol. III at 504-05). A second male DNA profile was also found, but there was an inadequate amount of the sample to analyze.

{¶ 6} A.G. testified at trial that she and A.H. subsequently discovered that although A.H.'s credit card had been used to pay for the room, that the room had been reserved by

Banks under his name and email address. (Tr. Vol II at 281-83). A.G. also testified that Banks was with them at The Backstretch, that he had purchased a round of alcohol shots for them, and that they stopped spending time with him when he made a remark that made both of them feel uncomfortable. *Id.* A.G. testified that she lost track of A.H. at some point after 11 p.m., and did not see her again until she drove to the hotel room the following morning, even though she and A.H. had planned to spend the entire weekend together on the Ohio Wesleyan campus.

{¶ 7} The hotel's overnight housekeeper testified that she never saw A.H., but that she had rented a hotel room to Banks at some point between midnight and 1 a.m. She testified that the only unoccupied and unbroken room was a "dirty room" that had not been fully made up after the previous occupants and that she was not permitted to rent it out. *Id.* at 233. Banks claimed to have a prior reservation for a room and showed her a confirmation number on a phone, and proceeded to pressure her into renting the room to him because he claimed to have a drunk female friend in the car who needed a place to stay. *Id.* at 225. She stated that although she repeatedly attempted to dissuade him from renting the room and told him several times that she could not rent him a "dirty room," he insisted on staying in the room even after she showed him the room itself, which had not been made up. *Id.* at 233-34.

{¶ 8} The interaction between the housekeeper and Banks was captured on security video, without sound. Banks can be seen entering the lobby, summoning the overnight housekeeper by calling from an internal phone, pacing the lobby, looking at his cell phone, peeping out the lobby window, conversing with the housekeeper when she arrived, showing her a cellular phone, and leaning over the counter to look at her computer multiple times. At one point, Banks jumps up and down and appears to briefly leave the lobby through the front door. Eventually, he and the housekeeper leave the lobby together and appear to enter the main hotel. They return after about two minutes and continue the discussion at the front desk. Banks appears to joke around with the clerk, and eventually another person enters the lobby. After a few additional moments it appears that Banks is able to conclude his discussion with the housekeeper, and he exits through the front door. The entire video is less than twenty minutes long. (*See generally* State's Ex. B)

{¶ 9} The defense did not call any witnesses, and the trial court denied its motion for a judgment of acquittal pursuant to Crim.R. 29. (Tr. Vol. III at 532-33). The case was

No. 19AP-256

submitted to the jury for decision and, following approximately five hours of deliberations, the jury found Banks guilty of one count of sexual battery, a felony of the third degree. The court ordered a presentence investigation, and subsequently sentenced Banks to four years of incarceration and informed him that he was being classified a Tier III sexual offender with a lifetime reporting and registration requirement. This timely appeal followed, and Banks now asserts two assignments of error.

{¶ 10} In the first assignment of error, he argues that the trial court erred by denying his Crim.R. 29(A) motion. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, syllabus (1978). The *Bridgeman* standard is essentially identical to the standard for "sufficiency of the evidence" announced in *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991), and "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* (following *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

{¶ 11} Here, the essential elements of sexual battery include: (1) "sexual conduct with another," which is defined in R.C. 2907.01(A) as vaginal, anal, or oral penetration, however slight, or the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another without privilege to do so; (2) that the other is "not the spouse of the offender," and (3) that "the offender knows that the other person's ability to appraise the nature of or control of the other person's own conduct is substantially impaired" or that "the offender knows that the other person submits because the other person is unaware that the act is being committed." R.C. 2907.03(A)(2) and (A)(3). "[A] jury can reasonably conclude that a defendant has knowledge of the victim's substantial impairment and inability to control his/her conduct for purposes of sexual battery under R.C. 2907.03(A)(2) when the evidence shows that the victim was in a state of deep sleep or drunkenness and did not consent to intercourse." *State v. Branch*, 10th Dist. No. 00AP-1219, 2001 Ohio App. LEXIS 2304, *5 (May 24, 2001). Here, the evidence is basically uncontroverted that A.H. was intoxicated, and her testimony as well as the testimony of her friend A.G. was sufficient for a reasonable juror to conclude

No. 19AP-256

both that A.H.'s ability to appraise and control her conduct was substantially impaired and that she submitted to sexual conduct with Banks because she was unaware that any such conduct occurred. She recalled arriving at the bar with her friends and ordering a drink, but has no other memories of the night of the incident. And the evidence was also sufficient for a reasonable juror to conclude that Banks was aware of her status, as he made admissions to the hotel housekeeper that he knew A.H. was drunk apparently to the point of incapacitation. Finally, the testimony of the SANE nurse and the Columbus Crime Law expert who did the DNA analysis provide sufficient uncontroverted evidence that Banks engaged in vaginal intercourse with A.H. for a reasonable juror to conclude such activity occurred.

{¶ 12} Therefore, the state presented sufficient evidence for reasonable minds to reach different conclusions as to whether each material element of sexual battery under R.C. 2901.03 was proven beyond a reasonable doubt, and the trial court did not err by denying the motion for judgment of acquittal. We hold that Banks' conviction is supported by sufficient evidence and his first assignment of error is accordingly overruled.

{¶ 13} Banks' second assignment of error argues that his conviction was against the manifest weight of the evidence presented at trial. Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds*, and quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing

No. 19AP-256

*Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 14} We have thoroughly reviewed the record, and it simply cannot be said that this is the exceptional case justifying a reversal based upon the weight of the evidence. All of the witnesses were credible and their testimonies were consistent with each other, the physical and documentary evidence supported the jury's verdict, and there are no reasonable doubts on this record as to the jury's decision. The jury reasonably concluded that Banks is guilty of the offense of sexual battery beyond a reasonable doubt. Therefore, we overrule Banks' second assignment of error. Having overruled Banks' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.